Danny **HARRELL**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 10A01–9208–CR–268.

Court of Appeals of Indiana,
First District.

June 2, 1993.

Rehearing Denied Sept. 3, 1993.

---

William L. Francis, Medlock & Francis, Salem, Steven A. Gustafson, Fox & Cotner, New Albany, for appellant-defendant.

Pamela Carter, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

ROBERTSON, Judge.

This is an interlocutory appeal from a criminal case. The operative facts show that Danny Harrell was charged with a criminal information in four felony counts on October 26, 1986. Harrell was arrested on February 29, 1992. Harrell subsequently moved to have the information dismissed pursuant to the Sixth Amendment speedy trial provisions. The trial court's denial of that motion is the basis of this appeal. The issue which requires reversal of the trial court ruling is stated as:

> Whether the State denied Harrell his right to a speedy trial, where Harrell was arrested in February of 1992 but the information was filed in October of 1986.

We reverse.

This case comes to us as an interlocutory appeal from a pretrial motion, specifically a motion to dismiss. Our supreme court does not favor pretrial appeals in criminal cases. *See Engle v. State* (1984), Ind., 467 N.E.2d 712, 715. This court may, however, decide such appeals under certain circumstances. *See* Ind.Appellate Rule 4(B)(6). *See e.g., Moran v. State* (1985), Ind.App., 477 N.E.2d 100. Our docket shows that we accepted jurisdiction of this interlocutory appeal on September 21, 1992.[1] We will

---

1. We agree, *see Majority Op.,* p. 965, with the dissenting opinion where it states that speedy trial claims are generally inappropriate for interlocutory appeal because the appeal process only postpones further the speedy trial the defendant has demanded. *Dissenting Op.,* p. 968. We note, however, that the defendant need not demand his right to a speedy trial but a defendant's assertion of his right is merely one of the *Barker* criteria and is not a necessary condition to the finding of a deprivation of the right to a speedy trial. *See Majority Op.,* p. 963. Nevertheless, Harrell asserted his right in this case.

More importantly, the decision we issue today has not permitted Harrell to invite the delay pending appeal and then show that the delay has prejudiced his defense. *See Dissenting Op.,* p. 968. This concern has some merit because we examine the impairment of the defense when we investigate the existence of prejudice. Nevertheless, it does not apply in the present case because the critical prejudicial item here, the alleged victim's apparent and substantial lack of memory, has been demonstrable since long before this Court accepted jurisdiction of this interlocutory appeal on September 21, 1992.

now decide this case in order to address the impact of *Doggett v. United States* (1992), — U.S. ——, 112 S.Ct. 2686, 120 L.Ed.2d 520, upon Harrell's claim that the events below denied him his federal constitutional right to a speedy trial. We do so because the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment and because that right applies to the states by virtue of the Fourteenth Amendment. *Moore v. Arizona* (1973), 414 U.S. 25, 27–28, 94 S.Ct. 188, 190, 38 L.Ed.2d 183 (quoting *Klopfer v. North Carolina* (1967), 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1); *Smith v. Hooey* (1969), 393 U.S. 374, 375, 89 S.Ct. 575, 576, 21 L.Ed.2d 607 (citing *Klopfer*, 386 U.S. 213, 87 S.Ct. 988).

▆▆▆ The Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an "accused." *United States v. Marion* (1971), 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468. It is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engages the particular protections of the speedy trial provisions of the Sixth Amendment. *Id.* Harrell became an "accused," for purposes of the speedy trial provisions, when the State filed the information against him on October 28, 1986. The State arrested Harrell on February 29, 1992, some five years and four months later.

▆▆▆ When this Court considers a speedy trial claim based upon the delay between the filing of the information and the arrest of the accused, it applies the balancing test set forth in *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. *Kristek v. State* (1989), Ind. App., 535 N.E.2d 144, 145 (citing *Stewart v.*

*State* (1976), 170 Ind.App. 696, 354 N.E.2d 749). That test includes such factors as the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. In this balancing test, the conduct of both the prosecution and the defendant are weighed. *Id.* None of the four factors is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. *Id.* at 533, 92 S.Ct. at 2193.

## I.

▆▆▆ The length of the delay is, to some extent, the triggering mechanism; and the length of the delay that will provoke an inquiry into the other factors is necessarily dependent upon the peculiar circumstances of the case. *Id.* at 530, 531, 92 S.Ct. at 2192, 2192. To simply trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold which divides ordinary from "presumptively prejudicial" delay. *Doggett*, —— U.S. at ——, 112 S.Ct. at 2690. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. *Id.*

▆▆▆ In *Barker*, a murder case in which the government delayed the trial because the co-defendant, who was sought as a defense witness, had to be tried first, it was "clear that the length of the delay between arrest and trial—well over five years—was extraordinary." *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193. In the pres-

Further, however, we recognize that fulfillment of the Sixth Amendment guarantee of a speedy trial would be impossible if every pretrial order were appealable. *United States v. MacDonald* (1978), 435 U.S. 850, 861, 98 S.Ct. 1547, 1553, 56 L.Ed.2d 18. Our appellate rules may be used to ensure that only appropriate interlocutory appeals are permitted. According to App.R. 4(B)(6), the rule used in this case, an interlocutory order, under circumstances such as this, can be had only if the trial court certi-

fies and the court on appeal or a judge thereof finds on petition that one or more listed circumstances will occur. A defendant cannot invoke such an appeal on his own. Unless the trial court and this Court, or a Judge of it, agree that an interlocutory appeal is appropriate under the circumstances, a defendant will not be allowed an interlocutory appeal of the denial of his pretrial motion to dismiss on speedy trial grounds. The floodgates remain closed, and the prosecution remains unharassed.

ent case, the delay was also over five years. Moreover, the nature of the evidence is Harrell's word against the victim's word about what did or did not occur. There appears to be no evidence which corroborates the alleged victim's claims apart from her own statements. While such evidence would not be required to sustain a conviction to the charges, the absence of such evidence in this case supports our conclusion that the "extraordinary" length of the delay favors Harrell's claim and triggers the inquiry into the other factors. The extent to which the delay stretches beyond the minimum needed to trigger our examination will be implicitly included below in our examination of the other *Barker* factors.

## II.

█ Closely related to the length of the delay is the reason the government assigns to justify the delay. *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192. Here, the State claims it was unable to serve the arrest warrant because Harrell had moved around and was absent from the state for considerable periods of time. This does not appear to be a deliberate, bad faith attempt on the State's part to delay trial in order to hamper the defense; but it also does not appear to be a "valid reason" for delay, such as a missing witness. *See id.*

In support of his motion to dismiss, Harrell testified that he had moved from Indiana to California in 1985. The State had then filed the information against him in 1986. Harrell then had both returned to Indiana and moved back to California in 1986. He subsequently had returned to Indiana, had lived in Kentucky for a while, and had moved to Florida. He then had moved to North Carolina, and he had traveled back to Indiana at least twice since 1990 to visit family in New Albany and planned to continue to do so. Harrell presented evidence that he had not known about the 1986 charges until his arrest in 1992; and, therefore, he has initially shown that none of this delay is attributable to him. Although the record does not show that the State ever was aware of Harrell's presence in Indiana between the time it

filed the information and arrested Harrell, the State also presented no evidence that it had attempted, with reasonable diligence, to serve the warrant or to find Harrell. We consider this reason for the delay a more neutral reason, which

> should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

*Id.* at 531, 92 S.Ct. at 2192. *See also, Scott v. State* (1984), Ind.App., 461 N.E.2d 141, 143 (The State's negligence in proceeding with the prosecution is a factor that must be considered along with the prejudice to the defendant). In short, the government is more to blame for the delay. *See Doggett,* —— U.S. at ——, 112 S.Ct. at 2690.

## III.

Harrell asserted his right to a speedy trial shortly after his arrest. At the hearing on his motion to dismiss, Harrell stated that he had not known about the charges before his arrest. The State did not introduce evidence contrary to these positions. The State acknowledges that the third *Barker* factor, the defendant's assertion of his right, should be considered in Harrell's favor.

## IV.

█ Prejudice should be assessed in the light of the interests of the defendant which the speedy trial right was designed to protect. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. The *Barker* court identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. *Id.* Of these, the most serious is the last because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. *Id.* Further, the only one of these interests that applies in the present case is the last because Harrell was not subjected to pretrial incarceration and, inasmuch as he did not know about the charges, could not

have been exposed to anxiety or concern about them.

We first note the problem this case presents due to its procedural posture. Harrell appeals from the denial of his motion to dismiss the information. As mentioned, interlocutory appeals of denials of pretrial motions are not generally permitted. We believe this should especially be true of a motion to dismiss an information on speedy trial grounds because an interlocutory appeal necessarily interrupts the pretrial proceedings so that a speedy trial is even further delayed. The Supreme Court of the United States has declined to exacerbate pretrial delay in federal cases by intruding upon accepted principles of finality to allow a defendant whose speedy trial motion has been denied before trial to obtain interlocutory appellate review. *United States v. MacDonald* (1978), 435 U.S. 850, 863, 98 S.Ct. .1547, 1554, 56 L.Ed.2d 18. The resolution of a speedy trial claim necessitates a careful assessment of the particular facts of the case. Most speedy trial claims, therefore, are best considered only after the relevant facts have been developed at trial. *Id.* at 858, 98 S.Ct. at 1551.

Before trial, of course, an estimate of the degree to which delay has impaired an adequate defense tends to be speculative. The denial of a pretrial motion to dismiss an indictment on speedy trial grounds does not indicate that a like motion made after trial—when prejudice can be better gauged—would also be denied.

\* \* \* \* \* \*

As already noted, however, there exists no such divorce between the question of prejudice to the conduct of the defense (which so often is central to an assessment of a speedy trial claim) and the events at trial. Quite the contrary, in the usual case, they are intertwined.

\* \* \* \* \* \*

The essence of a defendant's Sixth Amendment claim in the usual case is that the passage of time has frustrated his ability to establish his innocence of the crime charged. Normally, it is only after trial that that claim may fairly be assessed.

*Id.* at 858–860, 98 S.Ct. at 1551–52.

Given this, we nevertheless acknowledge that consideration of prejudice is not limited to the specifically demonstrable and that affirmative proof of particularized prejudice is not essential to every speedy trial claim. *Doggett,* —— U.S. at ——, 112 S.Ct. at 2692. Impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of evidence and testimony can rarely be shown. *Id.* at ——, 112 S.Ct. at 2692–2693 (quoting *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193). Though time can tilt the case against either side, one cannot generally be sure which party has been prejudiced more severely. Generally, therefore, the excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim· without regard to the other *Barker* criteria, it is part of the mix of relevant facts and its importance increases with the length of the delay. *Id.* at ——, 112 S.Ct. at 2693.

We concluded above that the length of the delay favors Harrell's claim and triggers the inquiry into the other *Barker* factors. Harrell has, therefore, crossed the threshold from ordinary delay; and we consider the delay to be presumptively prejudicial. Not only is the delay here presumptively prejudicial, however; it is demonstrably so.

Harrell submitted evidence of actual impairment of his defense. In her deposition, the alleged victim displayed an apparent and substantial lack of clarity in her memory about the major events and circumstances which surrounded the alleged incidents; and, as we stated above, in this particular case the evidence may be reduced to her word against Harrell's word. This lack of clarity in most things, except for the elements of the crimes, would make an attack on her credibility through cross-examination difficult, at best. If· Harrell

had known about the charges earlier, he would have had the opportunity to depose the alleged victim when the events at that point in her life were more fresh in her mind. This would have given him the ability to impeach her credibility, which is an appropriate trial tactic because her credibility would be crucial to a conviction. Under the circumstances, we need not see the conduct of the defense at trial to gauge the overall prejudice to Harrell's defense; it is apparent from the deposition. Any prejudice to the trial defense is as discernible now as it would be after trial and is unlikely to be overcome by events at trial. The record shows that Harrell was not only presumptively prejudiced but was also demonstrably prejudiced at this pretrial stage. Thus, the demonstrable pretrial prejudice here has overcome our reluctance to decide this interlocutory appeal of Harrell's pretrial motion to dismiss.

■ Still, not all of the prejudice Harrell identifies on appeal is demonstrable. Harrell proceeded with an alibi defense. He claimed that he had not lived at the victim's address during the period in question and that he had been at work when the alleged offenses had occurred. He gave the specific addresses of his employer and his residence at the time. The information alleges that the incidents occurred during a three month period in 1982. We recognize that Harrell was probably not at work, nonstop, for this three-month period and that he must have had the opportunity for some sort of access to the alleged victim even though he allegedly lived at another address. He filed an affidavit, however, in which he claimed the delay between the filing of the information and the arrest made it impossible for him to obtain certain employment records, telephone records, rent receipts, and other documents and to locate witnesses who could substantiate his claim of innocence. This offer of alleged missing evidence is not specific, however. Further, we cannot know the quality or quantity of alibi evidence Harrell could produce at a trial if he were to diligently seek it. Thus, although the delay in this case is "presumptively prejudicial," the offer of this alleged missing evidence is not suffi-

cient to show that the delay was "demonstrably prejudicial." Inasmuch as this case comes to us from the denial of a motion to dismiss, we believe we could better gauge any prejudice to Harrell's alibi defense after a trial were had.

■ In *Scott*, 461 N.E.2d 141, the reason for the delay was the State's negligence in proceeding with the prosecution. In order to warrant a grant of relief, negligence which is unaccompanied by particularized trial prejudice must have lasted longer than negligence which demonstrably causes such prejudice. *Doggett*, —— U.S. at ——, 112 S.Ct. at 2694. Thus, given that a defendant can show the State was negligent in proceeding with the prosecution, the defendant who can demonstrate prejudice has made a much stronger showing that his speedy trial right has been violated than a defendant for whom prejudice must merely be presumed. In the present case, we concluded that the government is more to blame for the delay because it presented no evidence that it had attempted, with reasonable diligence, to serve the warrant or to find Harrell. In light of this, and because Harrell has demonstrated prejudice from the delay, he has made a stronger showing that his speedy trial right has been violated than he would have had we merely presumed prejudice.

■ While affirmative proof of particularized prejudice is not essential to every speedy trial claim, *Doggett*, —— U.S. at ——, 112 S.Ct. at 2692, we are mindful that the Supreme Court does not allow pretrial, interlocutory review of a denial of a defendant's speedy trial motion in federal cases, *MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, and also that the Court decided both *Barker* and *Doggett* after the defendants had given their defenses at trial, not during the pretrial period by way of interlocutory appeals. We therefore conclude that, in the posture of an interlocutory appeal of a pretrial motion to dismiss an information on speedy trial grounds, a defendant must show more than a presumption of prejudice from the delay to obtain a reversal in Indiana. A mere presumption of prejudice

would not overcome our reluctance to decide an interlocutory appeal of a pretrial motion. Any actual prejudice to the defense is better gauged after a trial under those circumstances. To prevail at the pretrial stage, a defendant must show the delay caused demonstrable prejudice which is unlikely overcome by events at trial. Only then would we find good reason to decide the interlocutory appeal of a pretrial motion because actual prejudice is as apparent at the pretrial stage as it would be after the defendant were to complete his trial defense.[2]

■ In the present case, we do not know that Harrell would have been arrested any sooner had the State diligently sought him out-of-state or discovered him in-state. The absence of reasonable diligence, however, coupled with the demonstration of the alleged victim's apparent and substantial lack of clarity in her memory due to the extraordinary length of the delay and in light of Harrell's assertion of his speedy trial right, leads us to the conclusion that Harrell has demonstrated his defense has been impaired.[3]

## CONCLUSION

■ Although we are not required to do so, even after having accepted jurisdiction, we will decide Harrell's interlocutory appeal. Harrell has demonstrated that each of the *Barker* criteria is in his favor. The

delay was extraordinarily long; the State was not reasonably diligent; Harrell asserted his right to a speedy trial; and Harrell's defense has been demonstrably prejudiced. Although this Court is reluctant to grant interlocutory appeals of pretrial motions to dismiss, Harrell has shown that, under the relevant circumstances, he is entitled to relief. Harrell was denied his right to a speedy trial under the Sixth Amendment, and the trial court should have granted his motion to dismiss the information.

> The amorphous quality of the right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived. This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried. Such a remedy is more serious than an exclusionary rule or a reversal for a new trial, but it is the only possible remedy.

*Barker*, 407 U.S. at 522, 92 S.Ct. at 2188 (footnote omitted).

Dismissal is the only possible remedy we may provide to a defendant such as Harrell who has shown that his Sixth Amendment speedy trial right has been violated. Refusal to take such action appears to this Court to be inconsistent with substantial justice. *See* Ind.Trial Rule 61. Our appellate rules allow an interlocutory appeal under circumstances which show that an ap-

---

**2.** We agree with the dissenting opinion that, if a trial were to show that Harrell's Sixth Amendment right to a speedy trial were infringed, he would have a remedy through a direct appeal following entry of the final judgment. Thus,

> [i]f the factors outlined in *Barker v. Wingo, supra,* combine to deprive an accused of his right to a speedy trial, that loss, by definition, occurs before trial. Proceeding with the trial does not cause or compound the deprivation already suffered.

*MacDonald,* 435 U.S. at 861, 98 S.Ct. at 1553. If the deprivation, by definition, occurs before trial, then Indiana should provide relief before trial under circumstances in which a defendant can demonstrate that deprivation. Even though proceeding with a trial under those circumstances would not cause or compound the deprivation already suffered, it also would not eliminate the reversible error which is as demonstrable before trial as after.

**3.** The dissenting opinion states that the pretrial record simply does not show with any certainty the degree to which the delay has impaired Harrell's ability to present a defense. *Dissenting Op.,* p. 968. If certainty were the test, however, courts would have no reason to presume prejudice under any circumstances. Moreover, we have determined that the alleged victim's lack of memory was apparent and substantial. We are mindful that affirmative proof of particularized prejudice is not essential to every speedy trial claim even though we have made that proof essential to such a claim for purposes of an interlocutory appeal. Although the State's case may also have been hurt by the apparent and substantial lack of memory, Harrell has shown that the alleged victim remembers almost nothing but the elements of the crime. This is demonstrable prejudice which, when coupled with the other *Barker* factors, tips the scale in Harrell's favor.

pellant will suffer substantial expense, damage, or injury if the order below is erroneous and the determination thereof is withheld until after judgment. *See* App.R. 4(B)(6)(a). Harrell has shown that the potential harm here is substantial and approaches a blatant violation of basic principles which would render his trial unfair.

Judgment reversed.

STATON, J. concurs.

BAKER, J., dissents with separate opinion.

BAKER, Judge, dissenting.

I respectfully dissent from the majority's decision to decide this case on interlocutory appeal.[4] Except under extraordinary circumstances, reviewing the denial of a Sixth Amendment speedy trial claim is best done only after the relevant facts have been developed at trial. The pretrial record before us simply does not show with any certainty the degree to which delay has impaired Harrell's ability to present a defense. I know of no sound reason to engage in the imprecise game of speculating about the prejudice the lengthy delay may have caused Harrell when that prejudice can be gauged more accurately after trial.

The difficulty in assessing how a lengthy delay has impaired a defendant's defense before the trial record has been developed is well-illustrated in this case. In finding actual impairment, the majority points to the victim's deposition testimony in which the then eighteen-year old deponent was able to describe the elements of the crime, but she was unable to recall major events and circumstances surrounding the alleged molestation. Believing this to be "the critical prejudicial item," *op.* at 962–963 n. 1, the majority concludes the "apparent and substantial lack of clarity in her memory" will impair Harrell's ability to attack his accuser's credibility through cross-examination. *Op.* at 965. I cannot predict how the factfinder will assess the victim's testimony, or whether Harrell will be able to effectively challenge his accuser's credibili-

ty through cross-examination. It seems to me, however, that the victim's faded memory is much more likely to hurt the State's case than Harrell's defense.

I also believe speedy trial claims are generally inappropriate for interlocutory appeal because the appeal process only postpones further the speedy trial the defendant has demanded. Permitting a defendant to invite delay pending appeal, and then show delay has prejudiced his defense, to me, is a win-win situation we need not create. Although the majority concludes Harrell's defense was prejudiced long before we accepted jurisdiction of this interlocutory appeal, an assertion I believe has yet to be decided, I do not doubt the additional delay has only impaired further the victim's memory.

Finally, requiring Harrell to proceed to trial without first deciding his speedy trial claim neither violates the right we are bound to protect nor leaves him without a remedy. "[T]he Speedy Trial Clause does not, either on its face or according to the decisions of [the United States Supreme Court], encompass a 'right not to be tried' which must be upheld prior to trial if it is to be enjoyed at all." *United States v. MacDonald* (1978), 435 U.S. 850, 861, 98 S.Ct. 1547, 1553, 56 L.Ed.2d 18, 27. If a trial were to show that his Sixth Amendment right to a speedy trial was infringed, Harrell would have a remedy through a direct appeal following entry of the final judgment.

Because I do not believe we should accept an interlocutory appeal to review the denial of Harrell's speedy trial claim, I cannot concur with the majority's decision to dismiss outright the information charging Harrell with two counts of Class A felony child molesting. I would order this case remanded so that the trial process might be allowed to take its course.

---

**4.** I acknowledge that this court accepted jurisdiction of this case when a former member of this court, who is now retired, and I voted to grant an interlocutory appeal. Upon further

reflection I believe that decision was in error. The present members of this panel who are in the majority did not participate in the original decision to grant the interlocutory appeal.