John WILBURN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 22A01–9602–CR–58.

Court of Appeals of Indiana.

Sept. 18, 1996.

Transfer Denied Nov. 14, 1996.

---

Steven A. Gustafson, New Albany, for Appellant.

Pamela Carter, Attorney General, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

ROBERTSON, Judge.

John Wilburn appeals the revocation of his probation requiring him to serve the balance of a thirty-four year sentence for the possession of marijuana which had been suspended after he had served over nine years in prison. Wilburn raises two issues, neither of which constitute reversible error.

## FACTS

The dispositive facts are not disputed. In 1981, Wilburn was convicted of the possession and dealing of marijuana for his part in the harvest of approximately 300 pounds of the substance. He was also adjudicated an habitual offender. Wilburn received two consecutive four-year sentences enhanced by thirty years due to his habitual status resulting in an aggregate sentence of thirty-eight (38) years. Our supreme court reversed Wilburn's dealing conviction and remanded with instructions that Wilburn be resentenced to an aggregate of thirty-four years. *Wilburn v. State,* 442 N.E.2d 1098, 1103–04 (Ind.1982).

In 1989, Wilburn moved for a modification of his sentence alleging that he had served over eight years in prison, that he had an exemplary prison record, and that the statutory scheme for the habitual offender enhancement had been amended, ameliorating the harsh effect of a thirty year enhancement for a third class D felony conviction. (The two predicate felonies underlying Wilburn's habitual offender adjudication, as well as the instant possession conviction, were all class D felonies.) Wilburn correctly points out that, had he been sentenced under either of the two amendments to the habitual offender statute which had become effective after his sentencing, P.L. 328–1985 § 3 or P.L. 164–1993, he would have already long since finished serving his sentence. For example, had Wilburn been sentenced under the presently effective statutory scheme, the maximum sentence he could have received would have been 7½ years (3 + 3 × 1.5), which, under Indiana's two for one "good time credit" system could be served in less than 4 years. Ind.Code 35–50–2–7(a) and 8(e); I.C. 35–50–6–3(a).

In October of 1990, the State, represented by the Floyd County Prosecutor, entered into an agreement with Wilburn for the "*suspension* of the remainder of [Wilburn's] sentence, with [Wilburn's] immediate release from prison, conditioned upon the fact that [Wilburn] agrees to remain away from Floyd County, Indiana, indefinitely." (Emphasis added). This agreement was entered into pursuant to Ind.Code 35–38–1–17(b) which provides:

> If more than three hundred sixty-five days have elapsed since the defendant began serving the sentence ..., the court may *reduce or suspend* the sentence, subject to the approval of the prosecuting attorney.

(Emphasis added). On October 17, 1990, the trial court accepted the agreement and entered an order which reads in pertinent part as follows:

> 1. That [Wilburn's] Motion to modify his sentence is hereby granted.
>
> 2. That the balance of [Wilburn's] sentence is hereby *suspended* and [Wilburn] is to be released immediately from custody of the State from whatever penal institution he may now be incarcerated in.

(Emphasis added). Wilburn was immediately released from prison.

Three days later, the trial court entered an order dated October 17, 1990, which provided that Wilburn had been released to unsupervised probation for the balance of his sentence. However, Wilburn has consistently asserted that he never received notice of this order and had never been advised that his release was conditional, that he had been released to probation. Wilburn also claims that he was never advised that he was required to comply with any terms of probation. Wilburn has consistently maintained that he had understood his release to be unconditional.

On June 21, 1994, the State filed the instant petition for the revocation of probation alleging that Wilburn had committed various crimes while on probation. Wilburn was taken into custody. At the hearing on the revocation petition, the State presented evidence that Wilburn had been indicted on various drug charges in Kentucky which had been disposed of by Wilburn's guilty plea to the possession of drug paraphernalia.

The trial court revoked Wilburn's probation and ordered that he serve the remainder of his thirty-four year term in prison. This appeal ensued. Additional facts are supplied as necessary.

## DECISION

### I.

#### *Conditional Versus Unconditional Release From Prison*

■ As a general rule, the law in effect when the crime was committed controls sentencing. *Rowold v. State*, 629 N.E.2d 1285, 1288 (Ind.Ct.App.1994). An exception to the general rule is that when the penalty for a crime is decreased by an ameliorative amendment enacted after the commission of the crime, but before the defendant's sentencing, the defendant may take advantage of the ameliorative provisions. *Id.* However, the defendant is not entitled to a sentence reduction where the ameliorative amendment does not become effective until after his sentencing, absent legislative intent for retroactive application. *Terrell v. State*, 180 Ind. App. 634, 390 N.E.2d 208, 209 (1979).

■ The 1985 and 1993 ameliorative amendments to Indiana's habitual offender sentencing scheme became effective after Wilburn's 1981 sentencing. There is no manifestation of legislative intent that the amendments were to be given retroactive application. In fact, the 1985 amendment contained a savings clause that provided for the continuing validity of penalties imposed under the former habitual offender statute. P.L. 328–1985 § 3. Accordingly, Wilburn is not entitled to the retroactive application of the ameliorative amendments to the habitual offender statute and the trial court's suspension of the remaining period of incarceration was not mandatory, but was instead, a matter of grace. *See Childers v. State*, 656 N.E.2d 514, 516 (Ind.Ct.App.1995) (Suspension of a portion of a sentence is a grant of conditional liberty; suspension is a favor to the defendant, not a right), *trans. denied* (J. DeBruler dissenting to denial of transfer).

Indiana Code 35–50–2–2(c) provides that when a trial court exercises its discretion to suspend a portion of a sentence for a felony, it *shall* place the person on probation for a fixed period to end not later than the date that the maximum sentence that may be imposed for the felony will expire. However, Wilburn argues that I.C. 35–50–2–2(c) did not operate to place him on probation because it is codified under the statutory provisions relating to initial sentencing proceedings, while the remainder of his sentence was suspended under I.C. 35–38–1–17(b) after he had served several years in prison. We disagree.

■ Words and phrases in a statute must be afforded their plain, ordinary, and usual meaning unless a contrary purpose is clearly shown by the statute itself. *Harrison v. State,* 644 N.E.2d 888, 890 (Ind.Ct. App.1994). All statutory language is deemed to have been used intentionally and words or clauses in a statute are to be treated as surplusage only in the absence of any other possible course. *Brook v. State,* 448 N.E.2d 1249, 1251 (Ind.Ct.App.1983). Statutes relating to the same general subject matter are in pari materia and should be construed together so as to produce a harmonious statutory scheme. *Sanders v. State,* 466 N.E.2d 424, 428 (Ind.1984).

The plain, ordinary, and usual meaning of the word "suspend" or the term "suspension of sentence" implies a conditional, and not an unconditional, postponement. In Black's Law Dictionary, the term "suspension of sentence" is defined as the postponing of the execution of a sentence during the good behavior of the defendant. Black's Law Dictionary 1223 (5th ed. 1979). "Suspend" means to interrupt, to postpone, or to discontinue temporarily, "but with an expectation or purpose of resumption." *Id.* at 1297. "Suspend" has also been defined as "to withhold for a time on specified conditions (~ sentence on a convicted man)." Webster's Third New International Dictionary 2303 (1966).

Moreover, as set out above, I.C. 35–38–1–17(b) authorizes the trial court either to "reduce or suspend" the sentence in question. Wilburn's interpretation of this statute is un-

reasonable as it renders the word "suspend" superfluous.

Finally, the two statutes in question both deal with a criminal court's authority to suspend sentences. Thus, they are in pari materia and should be construed together to produce a harmonious statutory scheme.

■ Therefore, we conclude that, when the trial court *suspends* the remainder of a sentence pursuant to I.C. 35–38–1–17(b), the defendant is released to probation by operation of I.C. 35–50–2–2(c). In the present case, the trial court entered a *nunc pro tunc* order providing that Wilburn's probation would run for the balance of his suspended sentence.

■ If the court finds the defendant has violated a condition of his probation at any time before the termination of the probationary period, and the petition to revoke is filed within the probationary period, then the court may order execution of the sentence that had been suspended. *Childers,* 656 N.E.2d at 516—17. It is not necessary to advise a defendant to avoid committing an additional crime as a condition of probation because such a condition is automatically included by operation of law without specific provision to that effect. *Id.*; I.C. 35–38–2–1(b)(2). Therefore, any error in the trial court's failure to provide the defendant with a statement of the conditions of his probation is harmless where the trial court revokes probation for the commission of an additional crime. *Menifee v. State,* 600 N.E.2d 967, 969 (Ind.Ct.App.1992), *reh'g denied and clarified,* 605 N.E.2d 1207. The trial court may revoke probation for the mere commission of a criminal offense during the probationary period which the State has properly established by a preponderance of the evidence. *Boyd v. State,* 481 N.E.2d 1124, 1126 (Ind.Ct.App. 1985).

■ In the present case, the express terms of Wilburn's agreement with the State, as well as the express language of the trial court's order, provided that the remainder of Wilburn's 34 year sentence was to be *suspended,* but not reduced or vacated. Accordingly, Wilburn was not released uncondition-

ally, but was instead released to probation by operation of I.C. 35–50–2–2(c).

The undisputed evidence that Wilburn had pled guilty to a crime alleged to have been committed during the probationary period was sufficient to support the revocation of his probation. *See Childers,* 656 N.E.2d at 514. Moreover, as Wilburn's probation was revoked for the commission of an additional crime, any error in the trial court's failure to advise Wilburn of the terms of his probation was harmless. *See Menifee,* 600 N.E.2d at 969. Therefore, the trial court did not err in revoking Wilburn's probation and ordering him to serve the balance of his sentence in prison.

## II.

### *Speedy Trial*

Wilburn was returned to incarceration after the State had filed its motion to revoke his suspended sentence/probation. Almost 14 months passed before the trial court entered its order revoking Wilburn's probation. Wilburn asserts this delay was unreasonable and violated his due process rights and/or his right to a speedy disposition of his case. We disagree.

Indiana Criminal Rule 4 does not apply in proceedings to revoke a suspended sentence. *Oliver v. State,* 431 N.E.2d 98, 100 (Ind.Ct.App.1982). Where C.R. 4 does not apply, Indiana courts apply the balancing test set forth in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in evaluating claims of violations of the right to a speedy trial. *Harrell v. State,* 614 N.E.2d 959, 963 (Ind.Ct.App.1993), *trans. denied.* That test includes such factors as the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant. *Id.* The conduct of both the prosecution and the defendant are weighed. *Id.* Not any one of the four factors is either a necessary or sufficient condition to the finding of a deprivation of the right of a speedy trial. *Id.* Rather, they are related factors which must be considered together with such other circumstances as may be relevant. *Id.*

In the present case, Wilburn cannot establish one iota of prejudice from the delay. His conditional release from prison had been a favor, a matter of grace. The probation violation was not seriously disputed as Wilburn had pled guilty to having committed another crime during the probationary period. Moreover, the record affirmatively supports the conclusion that much of the delay was attributable to Wilburn. The trial court granted Wilburn a continuance when Wilburn repeatedly claimed he did not understand an agreement which had been reached with the State to dispose of this matter. Also, the proceedings were delayed further because Wilburn required a change in court-appointed counsel.

Based on the above, we discern no violation of Wilburn's right to a speedy resolution of these proceedings. Therefore, we find no error.

Judgment affirmed.

BAKER and NAJAM, JJ., concur.